In re Lance D. WHALEY.

Lance D. WHALEY, Plaintiff

v.

Mary Ann WHALEY, Defendant.

Bankruptcy No. 92–20542.
Adv. No. 92–2120.

United States Bankruptcy Court,
N.D. Mississippi.

Dec. 15, 1995.

Craig M. Geno, Holcomb, Dunbar, Connell, Chaffin & Willard, P.A., Jackson, MS, for Lance D. Whaley.

Nina S. Tollison, Tollison Law Firm, P.A., Oxford, MS, for Mary Ann Whaley.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a complaint filed by the plaintiff, Lance D. Whaley, against the defendant, Mary Ann Whaley; answer and affirmative defenses having been filed by said defendant; and the court having heard and considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

### II.

The plaintiff in this cause of action is Dr. Lance D. Whaley, a debtor in bankruptcy who filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 14, 1992. The defendant, Mary Ann Whaley, is the plaintiff's former wife. This is a proceeding to avoid certain court ordered transfers and obligations that arose as a result of a divorce proceeding litigated between the plaintiff and the defendant in the Chancery Court of Phillips County, Arkansas. The decree granting the divorce was entered on July 31, 1991. (Exhibit D–1) The order delineating the financial obligations between the parties, as well as, dividing the marital assets was entered on November 18, 1991. (Exhibit D–3)

Relying on 11 U.S.C. §§ 547(b), 548(a), and 549(a), the plaintiff seeks a return of the properties transferred and/or a monetary judgment against the defendant for the value of the transfers. Respectively, these sections permit the avoidance of preferential transfers, fraudulent conveyances, and unauthorized post-petition transfers.

### III.

The delineation of financial obligations and the division of marital assets, set forth in the order entered November 18, 1991, are discussed as follows:

A. *Periodic Alimony:*

The court awarded Mrs. Whaley alimony at the rate of $4,000.00 per month for a period of five years commencing retroactively on September 1, 1991. This monthly amount was reduced by $500.00 per month during the time that Mrs. Whaley occupied the marital residence.

Pursuant to 11 U.S.C. § 547(b), and 11 U.S.C. § 549(a), the plaintiff seeks to recover the following payments of alimony as avoidable preferences and/or unauthorized post-petition transfers:

1. Payments made from April, 1991, through October, 1991—$838.00 per week for twenty-eight weeks or a total of $23,464.00.

2. Payments made from November, 1991, through May, 1992—$3,500.00 per month for seven months or a total of $24,500.00.

3. Payments made from June, 1992, through November, 1995—$4000.00 per month for forty-two months or a total of $168,000.00.

According to the trial testimony, the debtor has made all of the aforementioned alimony payments as ordered by the Chancery

Court. The payments at the rate of $4,000.00 per month will continue until September, 1996.

### B. *Reimbursable Tuition Alimony:*

The Chancery Court awarded Mrs. Whaley reimbursable tuition alimony to enable her to return to college or to obtain vocational training. The plaintiff was directed to pay tuition, books, and supplies for up to eight semesters which Mrs. Whaley was to attend within a six year period.

Although it was disputed at trial as to whether the plaintiff was current in the payment of the tuition expenses, he seeks recovery from the defendant for the amounts previously paid in the sum of $3,178.23.

### C. *Child Support:*

The plaintiff has completed his obligations under the Chancery Court order regarding the payment of child support applicable to the only unemancipated child born to the marriage of the parties at the time of their divorce. Considering the financial circumstances of the plaintiff during the years leading up to the divorce, which will be discussed subsequently, the court is of the opinion that the child support obligations were moderate. The plaintiff seeks no recovery for any sums previously paid in this category.

### D. *Cash Surrender Value of Life Insurance:*

The Chancery Court awarded the plaintiff the cash surrender values of certain life insurance policies which were estimated to be in the sum of $11,000.00 to $14,000.00. Admittedly, the insurance policies, which insured the life of Mrs. Whaley, were cashed by Mrs. Whaley and the proceeds were not delivered to the plaintiff. In his post-trial memorandum, the plaintiff indicates that he seeks recovery in the sum of $10,000.00.

### E. *Attorney's Fees:*

The court awarded Mrs. Whaley attorney's fees in the total sum of $10,000.00. However, Dr. Whaley was given credit for the sum of $5,000.00, which he had paid in advance.

At trial, Dr. Whaley indicated that he paid Mrs. Whaley's attorney by check the sum of $2,808.50 (Exhibit P–9), as well as, that he endorsed and delivered to Mrs. Whaley and her attorney a separate Federal Land Bank check in the sum of $4,015.00, representing proceeds realized from the sale of Federal Land Bank stock, which was apparently owned by both Dr. and Mrs. Whaley.

Because the aforementioned check in the sum of $2,808.50, which was dated February 6, 1992, cleared the plaintiff's bank account on March 17, 1992, the plaintiff in his post-trial memorandum indicates that he is seeking to recover this sum as an unauthorized post-petition transfer. No mention is made in the memorandum of the plaintiff's interest in the Federal Land Bank check.

### F. *COBRA Obligations:*

The Chancery Court order provided, "Dr. Whaley is directed to comply with COBRA so that Mrs. Whaley can continue to have the benefit of health insurance." Dr. Whaley provided health and medical insurance for Mrs. Whaley, paying the premiums in connection therewith, from the time of the entry of the Chancery Court order until approximately August, 1994, when he provided notice to Mrs. Whaley that she would need to make other arrangements with respect to the payment for her health insurance coverage.

By a previous order of this court, dated April 26, 1995, a determination was made that Dr. Whaley had fully complied with the requirements of the Chancery Court order, and that he had no further obligation to provide Mrs. Whaley with health insurance. The court reserved ruling, however, as to whether Dr. Whaley was entitled to a judgment with respect to his claim that the medical insurance premiums that he had paid constituted unauthorized post-petition transfers. In his post-trial memorandum, the plaintiff seeks recovery in the total sum of $5,568.37.

### G. *Realty:*

1. Marital residence—The residence was sold for a sum approximating the amount of secured debt encumbering the property. As such, it will not be discussed further in this opinion.

2. Hernando, Mississippi, property—The Chancery Court found that this property was marital in character and that it should be sold with the proceeds divided equally be-

tween the parties despite the fact that the property was owned exclusively by Dr. Whaley. The property was subsequently sold and one-half of the net sales proceeds were applied to a debt which was partially secured by the property. The balance of the net proceeds, which included a prorata deduction for commissions, closing costs, etc., was deposited into an escrow account in the approximate sum of $13,000.00. This deposit would be equivalent to Mrs. Whaley's portion of the property settlement directed by the Chancery Court.

3. Office Building in Marianna, Arkansas—Although this property was also owned exclusively by Dr. Whaley, the Chancery Court found it to be marital in character. The court also found that there was no equity in the property and assigned the debt encumbering the property to Dr. Whaley. Interestingly, no provision was made regarding the disposition of this property in the court order. As such, there is no reason for this court to address this property in the resolution of this proceeding.

4. One-third interest in a lot near the Helena Regional Medical Center—Although this property was also owned exclusively by Dr. Whaley, the Chancery Court found it to be marital in character. The court also found that there was no equity in the property and assigned the debt encumbering the property to Dr. Whaley. Additionally, no provision was made regarding the disposition of this property in the court order. As such, there is no reason for this court to address this property in the resolution of this proceeding.

5. 18% interest in Jackson, Mississippi, limited partnership—Although the Chancery Court found that a positive equity position was doubtful in this asset, which was owned exclusively by Dr. Whaley, Mrs. Whaley was awarded one-half of Dr. Whaley's interest which was to be enforced by a charging order against the interest. Because this conceivably constitutes a transfer through a court ordered division of property, the effects of this provision will be discussed subsequently.

6. Omega Care, Inc.—Although this property was also owned exclusively by Dr.

Whaley, the Chancery Court found it to be marital in character. The court also found that there was no equity in the property and assigned the debt encumbering the property to Dr. Whaley. No provision was made regarding the disposition of this property in the court order. As such, there is no reason for this court to address this property in the resolution of this proceeding.

7. Vacant lot in Rena Lara, Mississippi—The Chancery Court found this property, which is titled to both Dr. Whaley and Mrs. Whaley, to be marital in character. The court further directed that the property, which is debt-free, should be sold and the net proceeds divided equally.

H. *Automobiles and Other Personal Property:*

The Chancery Court accepted the suggested division of personal properties as proposed by the parties, which included investment accounts, individual retirement accounts, and Keogh plans. One dispute in this category, as noted hereinabove, is the appropriation by Mrs. Whaley of the cash surrender values of the insurance policies in contravention of the Chancery Court order. Another involves the sale by Dr. Whaley of certain stock that was to be conveyed to Mrs. Whaley.

### IV.

The plaintiff is a board certified obstetrician and gynecologist who is now practicing medicine in Whitehaven, Tennessee. He has elected not to appeal the decree of divorce and the order entered on November 18, 1991. Shortly before and immediately after the divorce, the plaintiff's adjusted gross income, evidenced by his federal income tax returns, was as follows:

1989—$382,851.00

1990—$392,259.00

1991—$387,217.00

The plaintiff candidly admits that the Chancery Court awards of periodic alimony and reimbursable tuition alimony are nondischargeable debts in keeping with the provisions of 11 U.S.C. § 523(a)(5). This court concurs. In addition, considering specifically

the analysis of the Chancery Court concerning the respective financial positions of the parties (Exhibit D–2, p. 4), as well as, Dr. Whaley's earning capacity at the time of the divorce, this court concludes that the child support obligations, which are not disputed herein, and the COBRA obligations would also be considered nondischargeable debts.

█ Because the payments of the alimony and support obligations, i.e., periodic alimony, reimbursable tuition alimony, child support, and the COBRA payments, are nondischargeable debts, sheer practicality dictates that the plaintiff should not be permitted to recover their value for the bankruptcy estate. A judgment against the defendant would be meaningless because she would have a corresponding nondischargeable claim against the estate which would have to be paid in full with interest to effectuate her claim's present value.

As to these obligations, the preference analysis fails because Mrs. Whaley has not received more than she would be entitled to receive in a hypothetical Chapter 7 liquidation case. She would have an equivalent right of offset, because of her nondischargeable claims against the bankruptcy estate, as to any judgment that might be rendered against her.

█ Insofar as the fraudulent conveyance allegations are concerned, the court concludes that the awards of alimony and support were not unreasonable. According to the exhibit noted above, the Chancery Court appropriately analyzed the relevant factors when crafting the obligations. Dr. Whaley was under a court order to make these payments. As such, he received reasonably equivalent value for the amounts that he transferred.

█ Insofar as the unauthorized post-petition transfer allegations are concerned, the court observes that had the plaintiff not made the alimony and support payments that he would have likely been jailed for contempt of the Chancery Court. This is a reason why practically every bankruptcy court permits a debtor to separately classify alimony and support obligations, paying the same in full, when other unsecured creditors are treated less favorably. The prospects of reorganization or rehabilitation would be throttled if the debtor were jailed. The court notes that 11 U.S.C. § 549(a) focuses on transfers of property of the estate. The court recalls no testimony that the funds utilized to pay the post-petition alimony and support obligations were property of the estate. Rather, the court would assume that the payments came from the plaintiff's earnings from personal services, performed subsequent to the filing of the bankruptcy case, which would not be considered property of a Chapter 11 estate.

Therefore, as to the allegations in the complaint seeking to recover the payments of periodic alimony, the payments for reimbursable tuition alimony, and the payments made to comply with the COBRA obligations are not well taken.

This conclusion is consistent with the recently enacted provision found in 11 U.S.C. § 547(c)(7), which statutorily excepts payments of alimony and support from avoidance as preferential transfers. This Code addition could well be interpreted as a clarification of the initial intent of Congress that nondischargeable alimony and support obligations should never have been subject to preference avoidance.

## V.

█ The only remaining matters that are ripe for determination in this proceeding involve the Hernando property which has now been sold, the Rena Lara property which is jointly owned by the parties, and the limited partnership interest which was effectively divided by the Chancery Court even though it was owned exclusively by Dr. Whaley.

The court observes that 11 U.S.C. § 523(a)(15), which was recently enacted as a part of the 1994 Bankruptcy Reform Act, does not apply to this bankruptcy case which was filed long before the effective date of the section, i.e., October 22, 1994. The court is of the opinion, therefore, that the provisions in the Chancery Court order relating to these three parcels of realty effectuate a statutory mandated property division between the parties. (See § 9–12–317, Arkansas Statutes Annotated (Supp.1985), and

*Leonard v. Leonard,* 22 Ark.App. 279, 739 S.W.2d 697 (1987).) In the opinion of the court, these obligations are not in the nature of alimony or support and would otherwise be dischargeable in this bankruptcy case. The court will discuss each property separately:

■ A. Hernando, Mississippi, property—As noted earlier, this property has now been sold and one-half of the net proceeds, which were ordered by the Chancery Court to be paid to Mrs. Whaley, have been placed into an escrow account to preserve the status quo of the rights of the parties. The court is of the opinion that this provision in the Chancery Court order was effectively a property division, not in the nature of support or alimony for the benefit of Mrs. Whaley. Since Mrs. Whaley had no record title to this property, the transfer effectuated an avoidable preference as contemplated by 11 U.S.C. § 547(b), all of the requisite elements being present. The obligation to convey one-half of the net proceeds to Mrs. Whaley is a dischargeable debt. As such, the transfer unfairly affects the remaining creditors of Dr. Whaley's bankruptcy estate. The court is well aware that this property was encumbered by a deed of trust existing in favor of Sunburst Bank, which also holds a lien on the debtor's current residence in Sardis, Mississippi. Therefore, the court is of the opinion that the funds in the escrow account, including all interest accrued thereon, should become an asset of the debtor's bankruptcy estate, payable to the creditors of the estate as their respective interests may appear.

■ B. Rena Lara, Mississippi, property—The Chancery Court stated that this property, which it found to be marital in character and jointly owned by both parties, should be sold and the proceeds divided equally. The court is of the opinion that since Mrs. Whaley legitimately owned an undivided one-half interest in this property long before the bankruptcy case was filed, she is entitled to receive the proceeds from the sale of her interest. The provision in the Chancery Court order relative to this property cannot remotely be construed as a preference, a fraudulent conveyance, or an unauthorized post-petition transfer.

■ C. Jackson, Mississippi, limited partnership—This real property interest is practically identical to the Hernando, Mississippi, property. The provision in the Chancery Court order, dividing the interest owned exclusively by Dr. Whaley, is a division of what that court considered as a marital asset. Again, considering the magnitude of the alimony and support awarded to Mrs. Whaley, the division of this asset, which will have no value for years to come, could not be said to contribute to the support of Mrs. Whaley. Therefore, the court ordered transfer constitutes a preference as contemplated by 11 U.S.C. § 547(b). As such, the value of Dr. Whaley's interest in the limited partnership, if any, shall enure to the benefit of the creditors of the bankruptcy estate.

VI.

Admittedly, Mrs. Whaley appropriated the cash surrender values of the life insurance policies for her own use in contravention of the Chancery Court order. Admittedly, in order to pay taxes, Dr. Whaley sold the Wal–Mart stock and/or the BI, Inc., stock, which was to be conveyed to Mrs. Whaley. The court is unaware of whether the taxes were jointly assessable against Mrs. Whaley.

In addition to the aforementioned matters, the court is aware that there has been a possible overpayment to the attorney who represented Mrs. Whaley in the divorce proceeding. However, some or all of these attorney fees might be considered non-dischargeable obligations in Dr. Whaley's bankruptcy case. The evidence before the court on this point could best be described as confusing.

Since the parties may have to revisit the Chancery Court as a result of this decision, the court will defer to the Chancery Court as to what remedy is appropriate because Mrs. Whaley appropriated the cash surrender values of the insurance policies, because she did not receive the Wal–Mart and/or the BI, Inc., stock, as well as, because her attorney may have been overpaid. The net effect of these events may be negligible.